**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Amanda Elliott,

           Plaintiff,                         Case No. 2:22-cv-4053
                                                  Judge James L. Graham
    v.                                 Magistrate Judge Jolson

Alejandro Mayorkas, Secretary,
U.S. Department of Homeland Security,

           Defendant.

<u>Opinion and Order</u>

      Plaintiff Amanda Elliot brings this employment discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Elliot alleges that after she reported an incident of sexual assault, a supervisor created a hostile work environment which was motivated by retaliatory and sex-based animus. This matter is before the Court on the motion to dismiss of defendant Alejandro Mayorkas, in his official capacity as Secretary of the United States Department of Homeland Security. Defendant's motion challenges whether plaintiff exhausted her administrative remedies and whether the complaint states a claim for hostile work environment. For the reasons stated below, the Court denies the motion to dismiss as it relates to administrative exhaustion but grants the motion to dismiss for failure to state a claim.

I.    **Background**

    A.    **Factual Allegations**

      In 2009, Amanda Elliot began her employment with United States Immigration and Customs Enforcement ("ICE"), an agency of the Department of Homeland Security. She has been employed as a deportation officer in ICE's Columbus office since 2011.

      On February 18, 2016 a supervisory deportation officer pinned Elliot against a car and subjected her to unwanted kissing. Elliot reported the incident to ICE's Employee Assistance Program on the next day.

      Assistant Field Office Director Mark Hamilton served as Elliot's "second level supervisor." Hamilton learned in February or March 2016 of Elliot's report of a sexual assault. He then allegedly began a course of conduct designed to retaliate and discriminate against her.

1

For a two month period in April and May 2016, Hamilton assigned "an unmanageable workload" to Elliot. The Columbus office had two deportation officers, one of whom was Elliot. The other deportation officer took on the role of interim Supervisory Detention and Deportation Officer ("SDDO"). According to the complaint, Hamilton typically would have required the interim SDDO to continue to be responsible for his detention caseload, but he instead made Elliot responsible for all of the cases.

Elliot next alleges that Hamilton's treatment of her work product changed after he learned of her sexual assault report. Beforehand, he gave only minimal corrections to her work product. Afterwards, he allegedly made unnecessary corrections and unreasonably delayed in reviewing her work. As examples, the complaint alleges that in April and May 2016 Hamilton's delays twice caused Elliot to miss deadlines in completing her reports, which in turn risked her being subject to discipline.

In March 2017, Elliot requested that she be allowed to use her maiden name for work purposes. She had concerns for her personal security after ICE subjects found where she previously lived. Hamilton denied her request.

In June 2017, Hamilton required that Elliot be given a "letter of counseling" (a type of written reprimand) which she says was unwarranted. According to the complaint, Elliot's immediate supervisor disagreed with Hamilton that the letter of counseling was warranted, but Hamilton still required that it be issued.

In September 2017 Elliot took one day off work for a pregnancy-related reason. The complaint alleges that upon learning of Elliot's pregnancy, Hamilton took an incorrect position of the amount of sick leave available to her. Elliot submitted an advance request on December 15, 2017 for maternity leave for the anticipated birth of her child. Though Elliott's immediate supervisor would normally have reviewed the requests, Hamilton allegedly inserted himself into the process and initially denied her requests. He later approved her requests on January 4, 2018, and Elliot was able to take maternity leave.

Elliot returned to work from maternity leave on March 19, 2018. She alleges that she had a "bank" of already-approved Family Medical Leave Act leave which she could use intermittently to care for her newborn. According to the complaint, Hamilton again inserted himself into the leave-approval process. Elliot took leave on July 16, 2018 and her immediate supervisor told her that Hamilton said it was "a problem" for her to do so and that she would need to make up the time. She requested leave again on July 26, 2018, and her supervisor said that Hamilton would not

approve it. For other unspecified dates when she took leave, Elliot allegedly had to deduct leave from her regular balance – rather than use it from her pre-approved "bank." On other unspecified occasions, her leave requests were delayed or denied.

The complaint additionally alleges that Hamilton subjected Elliot to derogatory comments about her being pregnant and being a mother, though the complaint does not identify what Hamilton said. Elliot further alleges that Hamilton caused her peers to avoid her.

### B. Procedural History

The complaint alleges that Elliot initiated Equal Employment Opportunity counseling[1] on August 10, 2018. She filed a formal EEOC complaint of discrimination on September 20, 2018.

The EEOC issued a final decision on appeal on August 18, 2022, and plaintiff filed this suit within 90 days of the decision. *See* 29 C.F.R. § 1614.407(c).

The complaint in this case asserts two causes of action, both of which are labeled as hostile work environment claims. In Count I, the complaint alleges that Elliot engaged in protected activity under Title VII by reporting the sexual assault and that Hamilton retaliated against her by creating a hostile work environment. In Count II, the complaint alleges that defendant subjected Elliot to a hostile work environment because of her sex, including her pregnancy and status as a mother.

### II. Motion to Dismiss Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Iqbal*, 556 U.S. at 679; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Twombly*, 550 U.S. at 555-56.

When the complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at

---

[1] As will be explained below, the step of counseling is required because of Elliot's status as a federal employee.

678. Though "[s]pecific facts are not necessary," *Erickson*, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," *Twombly*, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. Administrative Exhaustion

Defendant raises two separate types of administrative exhaustion challenges. First, it argues that plaintiff did not timely initiate the administrative grievance process for much of the alleged wrongful conduct. Second, it alleges that components of the alleged wrongful conduct were not included within the scope of the administrative proceedings.

### A. Timely Initiation of the Grievance Process

Under the regulations for federal sector employees, persons who "believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *Id* at § 1614.105(a)(1).

In allowing federal employees to bring suit under Title VII, "Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976)). The requirement that an aggrieved employee initiate contact with a Counselor with 45 days of the discriminatory conduct is one which a plaintiff must satisfy in order to exhaust her administrative remedies. *Id.*; *Bryant v. Wilkie*, 834 Fed. App'x 170, 173 (6th Cir. 2020); *Sanders v. Postmaster Gen.*, No. 2:19-CV-2566, 2020 WL 4000976, at *5 (S.D. Ohio July 15, 2020) ("In order for a plaintiff to exhaust her administrative remedies, she must make timely contact with the EEOC.").

As alleged in the complaint, the conduct forming the hostile work environment began almost immediately after Elliot's February 19, 2016 report of the sexual assault and it continued

forward. Elliot was forced to take on an increased workload in April and May 2016. Hamilton began subjecting Elliot's work product to undue scrutiny and delay soon after the report. He refused to allow Elliot to use her maiden name in March 2017. Hamilton had the unwarranted reprimand issued to Elliot in June 2017. His scrutiny and delay of her maternity leave requests occurred from September 2017 to January 2018. The complaint also alleges that Hamilton made derogatory comments about Elliot and caused her peers to avoid her. On July 16 and 26, 2018, Elliot submitted leave requests to care for her newborn. The complaint alleges that Elliot made other leave requests around this time which were resisted or incorrectly handled.

Defendant argues that the only allegations which were timely grieved within the 45-day period before August 10, 2018 were those relating to the leave requests made on July 16, 2018 and thereafter. Plaintiff counters that her claims fit within a continuing violation theory – namely, she has alleged the existence of a hostile work environment which continued into the 45-day period leading up to when she initiated EEO counseling.

The case law supports plaintiff's position. In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the United States Supreme Court held that the exhaustion analysis applies differently for hostile work environment claims than it does for discrimination claims based on discrete adverse actions (termination, failure to promote, refusal to hire).

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. . . . . The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. . . . Such claims are based on the cumulative effect of individual acts.
>
> . . .
>
> To assess whether a court may, for the purposes of determining liability, review all such conduct (underpinning a hostile work environment claim), including those acts that occur outside the filing period, we again look to the statute. It provides that a charge must be filed within 180 or 300 days "after the alleged unlawful employment practice occurred." A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. **Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.**

*Id.* at 115–17 (emphasis added). *See also id.* at 118 ("In order for the [EEOC] charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.").

Shortly after the *Morgan* decision, the Sixth Circuit applied *Morgan*'s holding to the 45-day initiation requirement for federal employees. In *McFarland*, the Sixth Circuit held, "A hostile-work-environment claim thus has an effect similar to that of a continuing violation composed of successive discrete acts, in that the existence of the hostile work environment within the 45-day time limit causes the actionable violation to encompass conduct that occurred outside of the limit." 307 F.3d at 408. A grievance by a federal employee is thus timely if it is "based upon a hostile work environment that existed less than 45 days before [initial contact with a Counselor]." *Id.*

Defendant is correct that the specific dates alleged in the complaint nearly all precede the 45-day period leading up to August 10, 2018. However, the complaint alleges that Hamilton created a hostile work environment after Elliot's sexual assault report and that he committed acts contributing to the hostile work environment within the 45-day time period. The complaint alleges that the hostile work environment extended into the 45-day time period in two ways. First, Hamilton continued to resist and delay Elliot's FMLA requests in the 45-day period. Second, Hamilton's unwarranted scrutiny of Elliot's work product is not alleged to have ever ceased. Though the final specific example of unwarranted scrutiny given in the complaint occurred in September 2017, the complaint does not allege that the scrutiny ended at that point or any other point.

Defendant next argues that the conduct alleged to have contributed to the hostile working environment is comprised of discrete, unrelated acts which cannot be used to form the basis of a hostile work environment case.

*Morgan* again guides this Court's analysis. A court should sort out "discrete acts" which are alleged to be discriminatory or retaliatory and which "constitute[] a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114 "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Id.* The first step in the administrative grievance process must be accomplished within the applicable time period "after the discrete discriminatory act occurred." *Id.* at 113. *See also Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003).

A court should then identify "repeated conduct" in the nature of harassment, which cannot be said to occur on any particular day" because it "occurs over a series of days or perhaps years." *Id.* at 115. "[I]n direct contrast to discrete acts, a single act of harassment may not be actionable on its

own." A hostile work environment claim, thus, is "based on the cumulative effect of individual acts." *Id.*

Applying *Morgan*'s guidance, the Court finds that the complaint does not allege discrete acts which are independently actionable as sex-based discrimination or retaliation. Elliot was not fired or demoted, nor does she allege that she experienced a significantly adverse change in her work conditions. *See generally Burlington Industries v. Ellerth*, 524 U.S. 742, 761 (1998); *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 797 (6th Cir. 2004); *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004). Rather, she alleges that Hamilton unduly scrutinized and delayed in reviewing her work product, unduly scrutinized and delayed in reviewing her leave requests, increased her workload for two months, refused her request to use her maiden name, made derogatory comments, and caused her peers to avoid her. These allegations are of the type on which a hostile work environment claim would be based.

Defendant puts much attention on the leave requests. It argues that the interference with or denial of FMLA leave is a discrete act and independently actionable. The Court must reject this argument here because Elliot is not bringing suit under the FMLA. She instead alleges that Hamilton's resistance against her exercise of leave was motivated by sex-based, retaliatory animus, in violation of Title VII. Importantly, Elliot does not allege that Hamilton's delay or denial of her leave requests rose to the level of a materially adverse change in the conditions of her employment. Rather, she alleges that his conduct contributed to a continuing hostile work environment.

Finally, defendant argues that the conduct which fell within the 45-day period – the delay or denial of the July 2018 FMLA leave requests – is unrelated to the rest of the alleged conduct forming the hostile work environment claim. Defendant argues that Elliot should not be allowed to use disparate types of conduct to cobble together a claim for hostile work environment.

In *Morgan*, the Supreme Court held that Title VII "does not separate individual acts that are part of the hostile [work] environment claim from the whole for purposes of timely filing and liability." *Morgan*, 536 U.S. at 118. *See also Clark v. Donahoe*, No. 2:11-CV-597, 2012 WL 3224097, at *7 (S.D. Ohio Aug. 6, 2012) (noting that "not all of the events in a hostile work environment need to be identical to be considered part of that environment"). Only an act which is too far removed in kind or time will be excluded. *See El-Zabet v. Nissan N. Am., Inc.*, 211 Fed. App'x 460, 464–65 (6th Cir. 2006) (rejecting the attempt to connect a recent act to a "distant event"); *Richards v. Dep't of Army*, No. 05-1091, 2007 WL 579549, at *3 (6th Cir. Feb. 15, 2007) (rejecting a "string along" theory). Thus, "'plaintiff must show that the current violation . . . is indicative of a pattern of similar

discriminatory acts continuing from the period prior to the limitations period.'" *El-Zabet*, 211 Fed. App'x at 464 (quoting *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 376 (6th Cir. 2002)).

Allegations relating to an employee's leave requests could potentially be dissimilar to other workplace issues. But the Court finds that the complaint adequately alleges that Hamilton's treatment of Elliot in response to her July 2018 requests was part of a continuing pattern. The pattern consisted of Hamilton subjecting Elliot to undue scrutiny, resistance, and delay. It included Hamilton's review of her work product, as well as his earlier review of her maternity leave request. Hamilton allegedly resisted and discouraged Elliot in several other ways: by increasing her workload, rejecting her request to use her maiden name, causing one of her supervisors to give her an unwarranted reprimand, and instructing her peers to avoid contact with her.

Accordingly, the Court finds that the alleged hostile work environment was comprised of a pattern of conduct which continued to exist within the 45-day period leading up to Elliot's initiation of counseling.

### B. The Scope of the EEOC Proceedings

Defendant next argues that Elliot failed to exhaust certain components of her hostile work environment claim because she did not include them within the scope of the complaint presented to the EEOC. Defendant cites to the "expected scope of investigation" rule, which provides that the "judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002) (internal quotation marks omitted); *see also Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). "The purpose of the requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Dixon*, 392 F.3d at 217.

This rule is designed to filter which legal claims a plaintiff may assert in a Title VII case. If, for instance, an EEOC complaint of race discrimination provided no basis for an employer to anticipate a claim of age discrimination in a subsequent Title VII suit, then the age discrimination was not exhausted and is barred. However, "'where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'" *Weigel*, 302 F.3d at 380 (quoting *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)). *See also Dixon*, 392 F.3d at 217 ("The determinative inquiry in this case, therefore, is whether Dixon alleged sufficient facts in his EEOC

Complaint to put the EEOC on notice of his retaliation claim, despite that he did not check the appropriate box on the EEOC's Complaint of Discrimination form.").

There is no dispute that Elliot's EEOC claims were that defendant "discriminated against [her] and subjected her to a hostile work environment based on her sex (Pregnancy) and retaliation." Doc. 19-3 at PAGEID 106. She makes precisely the same claims here.

Defendant seeks to use the "expected scope of investigation" rule in a different way. Instead of applying it to preclude a claim, defendant would use it to preclude consideration of factual allegations supporting the claim. Defendant points out that there are certain aspects of the hostile work environment of which Elliot did not complain in the EEOC proceedings. The Court's review of the administrative proceedings confirms that defendants are correct, at least in part.[2]

The Court must reject defendant's attempt to apply the "expected scope of investigation" rule to factual allegations rather than to claims. Defendant has cited no authority in support of its argument. Elliot's EEOC complaint sufficiently put defendant on notice that she was asserting a hostile work environment claim. One would expect a reasonable investigation to cover the various aspects of the work environment which made it hostile, even if the investigation did not ultimately address all of those aspects. *See Ogbonna-McGruder v. Austin Peay State Univ.*, No. 3:21-CV-00506, 2023 WL 3572891, at *11 n. 14 (M.D. Tenn. May 19, 2023), aff'd, 91 F.4th 833 (6th Cir. 2024) ("As *Morgan* indicates, a 'hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice' and so 'it does not matter ... that some of the component acts of the [alleged] hostile work environment' were not administratively exhausted, as long as the overarching claim of hostile work environment (the alleged 'unlawful employment practice' at issue) was administratively exhausted.") (quoting *Morgan*, 536 U.S. at 117).

## IV. Failure to State a Claim

Defendant argues that plaintiffs' allegations, even if timely, are insufficient to state a hostile work environment claim because the alleged harassing conduct was not sufficiently severe and pervasive. The Court agrees.

---

[2] Defendant contends that Elliot complained of nothing beyond undue scrutiny of her work product and of her leave requests. This argument is overbroad. In the EEOC proceedings, Elliot did complain of derogatory comments, the unwarranted issuance of a reprimand, and Hamilton's causing her peers to avoid her. *See* Doc. 23-at PAGEID 141, 149, 164. But there is no evidence that Elliot complained of Hamilton's refusal to allow her to use her maiden name or of him imposing an increased workload on her for a two-month period.

The complaint asserts two claims under Title VII – one for a retaliatory hostile work environment and one for discriminatory hostile work environment on the basis of sex. Both types of claims require a showing of an adverse action taken by the employer against the employee. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (for a retaliation claim, plaintiff must show the defendant took a "materially adverse" action against him – one that "well might have dissuaded a reasonable worker" from engaging in protected activity); *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024) (for a discrimination claim, plaintiff must show the defendant created a work environment which was hostile to plaintiff).

Underpinning both claims is the requirement that plaintiff allege the existence of severe and pervasive harassment. *See Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839, 841 (6th Cir. 2024). That is, to establish her discrimination claim, plaintiff must show that her workplace was "'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 839 (quoting *Morgan*, 536 U.S. at 116). And to establish her retaliation claim, plaintiff must make the same showing of severe or pervasive harassment. *Id.* at 841. While some circuits have interpreted the "dissuaded a reasonable worker" standard for a retaliation claim to lower or supplant the "severe and pervasive harassment" standard, the Sixth Circuit has "repeatedly held that a retaliatory hostile work environment claim must include evidence that the harassment was severe or pervasive." *Id.* at 842 (citing cases).

In determining whether a workplace is permeated with "intimidation, ridicule, and insult that is sufficiently severe and pervasive," a court considers the totality of circumstances. *Id.* at 840. The factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009). The "alleged harassment must be both objectively and subjectively severe and pervasive to be actionable." *Ogbonna-McGruder*, 91 F.4th at 841.

The complaint alleges that Hamilton subjected Elliot to a pattern of undue scrutiny and delay in reviewing her work product and her leave requests. He also allegedly resisted and discouraged Elliot by increasing her workload, causing one of her supervisors to give her an unwarranted reprimand, rejecting her request to use her maiden name, instructing her peers to avoid her, and making derogatory comments about her.

In considering the complaint as a whole, the Court finds that it fails to allege the existence of severe and pervasive harassment. Primarily lacking from the complaint are factual allegations from which one could make inferences in plaintiffs' favor about the frequency and severity of Hamilton's alleged conduct.

The complaint alleges that Hamilton was "hypercritical of Ms. Elliot's work." Compl., ¶ 42. The complaint provides no context for how often Hamilton reviewed her work, other than alleging that he was not Elliot's immediate supervisor. *Id.*, ¶ 24. The complaint offers three instances (April 27, 2016, June 14, 2016, and September 20, 2017) in which Hamilton scrutinized and delayed her work. Though the complaint alleges that Hamilton was unduly critical of her work, it describes the criticism in a non-severe way, alleging that Ms. Elliot's work product "would come back with several corrections" and "rude" comments. *Id.*, ¶ 35; *see also id.*, ¶ 41 (alleging that Hamilton returned Elliot's work product to make "corrections"). Further, Hamilton's delay in reviewing her work, though twice putting Elliot past a deadline and at risk for discipline, is not alleged to have caused any adverse consequences for her. In sum, the complaint does not articulate facts from which it can be inferred that Hamilton's "hypercritical" conduct was pervasive or severe to the point it unreasonably interfered with Elliot's work performance. *See Richard v. Bell Atl. Corp.*, 209 F.Supp.2d 23, 35 (D.D.C. 2002) (holding that the "the type of conduct that [the plaintiff] complain[ed] of, i.e., rude comments, unjust criticism, and stressful working conditions, amount to ordinary tribulations of the workplace that [is] insufficient as a matter of law for a hostile [work] environment case"); *Nurriddin v. Bolden*, 674 F.Supp.2d 64, 94 (D.D.C. 2009) ("[C]lose scrutiny of assignments by management cannot be characterized as sufficiently intimidating or offensive in an ordinary workplace context.").

The Court finds the same with regard to Hamilton's alleged undue scrutiny and delay of Elliot's leave requests. With respect to Elliot's maternity leave request, the complaint alleges that Hamilton at first took an incorrect position about the amount of leave available to her and initially denied her request. However, the complaint alleges that Hamilton later fully approved her maternity leave, and there are no allegations that Hamilton's conduct interfered with her work performance.

With respect to Elliot's leave requests to care for her newborn, the complaint alleges that Hamilton said it was "a problem" for her to take leave. He allegedly caused leave to be deducted from her regular balance rather than a pre-approved "bank." While the complaint alleges that on an unspecified number of occasions her leave requests were denied, plaintiff's response brief concedes that the requests were granted and that she is complaining only about Hamilton's delay in approving them. *See* Doc. 23 at PAGEID 120 n.7. Here too, the allegations fail to support an inference that

Hamilton's alleged resistance to her leave requests was frequent or interfered with her work performance. The complaint alleges that Elliot lost some unspecified amount of her leave balance and perhaps had to make up some unquantified amount of missed time from work, but the complaint does not allege any particular facts to show that these consequences were harmful or burdensome to her. *See Parekh v. Swissport Cargo Servs., Inc.*, No. CV-08-1994(CPS), 2009 WL 290465, at *5 (E.D.N.Y. Feb. 5, 2009) (dismissing as insufficient a hostile work environment claim based on "wrongfully withheld vacation time" and unfair disciplinary actions).

Turning to the remainder of the allegations, the Court similarly finds that they do not allege severe and pervasive harassment. Hamilton allegedly required Elliot to take on an "unmanageable workload" when a co-worker was promoted. Compl., ¶ 26. But the complaint alleges that this situation lasted for just two months, and there are no allegations that Elliot was not able to handle the temporary increase in responsibility or that she was disciplined for failing to complete her work. *See Ceckitti v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 14 Fed. App'x 512, 518 (6th Cir. 2001) (courts may "filter out complaints attacking the ordinary tribulations of the workplace").

Regarding the written reprimand, the complaint does not explain why it was unwarranted. In any event, it occurred just once and resulted only in Elliot being given "written counseling." Compl., ¶ 50. *See Bonnette v. Shinseki*, 907 F. Supp. 2d 54, 81 (D.D.C. 2012) (holding that a "written admonishment for [plaintiff's] failure to attend mandatory training" is the "type of work-related actions by supervisors that provide insufficient grounds for a hostile work environment claim) (internal quotation marks omitted); *Murray–Dahnir v. Loews Corp.*, No. 99 Civ. 9057(LLM), 1999 WL 639699, at *4 (S.D.N.Y. Aug 23, 1999) (holding that plaintiff failed to state a hostile work environment where his supervisor admonished him publicly and unjustifiably on numerous occasions, he received an overly critical memo, and he was required to work extra hours).

With respect to Hamilton's denial of Elliot's request to use her maiden name, the complaint refers to Elliot having security concerns but does not articulate that there was a tangible threat.[3] Hamilton also allegedly caused Elliot's peer to avoid her, but the complaint does not assert that this inhibited Elliot's ability to do her work. *See* Compl., ¶ 3 (alleging simply that her peers did not come to her for guidance in doing their work). *See Clarke v. InterContinental Hotels Grp., PLC*, No. 12 CIV. 2671 JPO, 2013 WL 2358596, at *10 (S.D.N.Y. May 30, 2013) (holding that plaintiff's allegations

---

[3] The complaint alleges that four non-detained ICE subjects had visited her prior residence, which was listed under her maiden name. Elliot moved to a new house, with the mortgage in her married name. A detainee's representative allegedly referred to her by her married name, but there are no further allegations to suggest why this posed a security concern to Elliot.

that supervisors "snubbed her," "excessively scrutinized her work; and gave her more work to do than other employees . . . . [did] not plausibly point to a work environment that is sufficiently abusive to constitute a hostile workplace").

Finally, as to the derogatory comments, the complaint alleges no facts beyond that the comments related to "her status as a mother and about her pregnancy."  Compl., ¶ 3.  The complaint does not allege what Hamilton said or how often he made such comments.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 ("simple teasing, . . . offhand comments, and isolated incidents" generally do not suffice to state a hostile work environment claim).

Viewing the totality of the alleged circumstances, the Court finds that the complaint portrays a workplace situation in which Elliot experienced an unpleasant relationship with Hamilton, an assistant office director who was not her immediate supervisor.  *See Holmes-Martin v. Sebelius*, 693 F. Supp. 2d 141, 165 (D.D.C. 2010) ("[O]rdinary workplace conflicts . . . are not sufficiently severe or pervasive to support a hostile work environment claim.").  When she interacted with him (which may have been relatively infrequently), she was met with criticism and resistance.  However, the complaint fails to offer factual content from which it could be inferred that the conduct was frequent, severe, threatening, or unreasonably interfered with Elliot's work performance.  In sum, the complaint does not allege harassment, intimidation, ridicule, or insult so pervasive and severe so as to constitute a hostile work environment.

## V.    Conclusion

Accordingly, defendant's motion to dismiss (Doc. 19) is DENIED as to administrative exhaustion but GRANTED as to failure to state a claim.  Plaintiff's motion for leave to file a surreply (Doc. 29) is granted.

Plaintiff's brief in opposition to the motion to dismiss requests an opportunity to amend the complaint, should the motion be granted.  Defendant has not opposed this request.  Accordingly, plaintiff is granted thirty days from the date of this Order to amend her complaint.  Should she fail to do so, the Clerk of Court will terminate this case.


                                                    *s/ James L. Graham*
                                                    JAMES L. GRAHAM
DATE: April 4, 2024                                 United States District Judge