IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Amanda Elliott,

        Plaintiff,                              Case No. 2:22-cv-4053
                                                    Judge James L. Graham
    v.                                                Magistrate Judge Jolson

Alejandro Mayorkas, Secretary,
U.S. Department of Homeland Security,

        Defendant.

Opinion and Order

      Plaintiff Amanda Elliott brings this employment discrimination case under Title VII of the Civil Rights Act of 1964, against defendant Alejandro Mayorkas, in his official capacity as Secretary of the United States Department of Homeland Security.  *See* 42 U.S.C. § 2000e *et seq*.  Elliott began her employment with United States Immigration and Customs Enforcement ("ICE"), an agency of the Department of Homeland Security in 2009.  She has been employed as a deportation officer in ICE's Columbus office since 2012.

      This matter is before the Court on defendant's motion to dismiss the amended complaint, which is denied for the reasons stated below.

**I.**      **Background**

      Elliott alleges that after she reported an incident of sexual assault in 2016, supervisor Mark Hamilton created a hostile work environment which was motivated by retaliatory and sex-based animus.  She alleges that Hamilton retaliated and discriminated against her in the following ways: giving her an unmanageable workload; subjecting her work product and performance to unreasonable criticism, scrutiny and delay; subjecting her pregnancy- and maternity-related leave requests to unreasonable scrutiny and delay; causing her to receive a written reprimand; making derogatory comments about her on the basis of sex; rejecting her request to use her maiden name for purposes of personal security; and instructing her peers to avoid her.

      In a prior Opinion and Order, the Court addressed defendant's motion to dismiss the original complaint.  The Court denied the motion to dismiss as to the issue of whether plaintiff had

1

exhausted the administrative grievance process. The Court, however, granted the motion to dismiss as it related to the complaint's failure to state a claim for retaliation or discrimination under Title VII. The Court found that the complaint failed to set forth factual allegations which supported an inference that Hamilton's conduct was sufficiently severe or pervasive so as to constitute a hostile work environment. *See Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839, 841–42 (6th Cir. 2024) (to prevail on a hostile work environment claim based on either discriminatory or retaliatory animus, plaintiff must establish that her workplace was permeated by intimidation, ridicule, insult, or harassment so severe or pervasive as to alter the conditions of employment and create an abusive working environment). Particularly lacking in plaintiff's original complaint were allegations about the frequency and severity of Hamilton's conduct and how it interfered with plaintiff's ability to perform her work. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (a court looks to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance").

Upon dismissing the original complaint, the Court granted leave to the plaintiff to amend her complaint. Plaintiff has filed an amended complaint. This matter is now before the Court on defendant's motion under Rule 12(b)(6), Fed. R. Civ. P., to dismiss the amended complaint.

**II.     Standard of Review**

In considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Iqbal,* 556 U.S. at 679; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Twombly*, 550 U.S. at 555-56. When the complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

**III.     Discussion**

The Court finds that the amended complaint resolves the deficiencies of the original complaint.  It contains ample factual allegations regarding the frequency and severity of Howard's conduct towards Elliott, as well as the impact it had on her ability to perform her work.  The Court finds that this is so with respect to each of the various ways in which Howard allegedly mistreated Elliott.

Regarding the alleged unmanageable workload imposed on Elliott immediately after she complained of sexual assault, the original complaint lacked allegations that the situation lasted for any significant period of time or that she was unable to handle the increased responsibilities.  The amended complaint cures that shortcoming.  It alleges that in the Spring of 2016, Howard assigned all new deportation cases in the Columbus office to Elliott for a period of about two months.  Though relatively short in time, this phase of assigning all cases to Elliot had a lasting and serious impact on Elliott, which is what Howard allegedly intended.  Elliott was assigned 120 cases, while a typical deportation officer would have 20 cases.  The amended complaint alleges that:

> The increased and unmanageable workload unreasonably interfered with Ms. Elliott's ability to perform her job because, among other things, she could not complete the tasks required for each case by the applicable deadlines and constantly had a backlog of overdue work.  Indeed, Ms. Elliott's performance review for the period October 1, 2015 to September 30, 2016, stated that she "maintained a large number of problematic cases during a majority of the rating year.  Working under conditions of "damage control," some 90 Day POCRs [Post-Order Custody Reviews] were not completed timely."

Am. Compl., ¶ 32.  According to the amended complaint, Elliott was continually unable to meet deadlines and feared discipline until Hamilton retired in December 2018.  The amended complaint further alleges that Elliott sought help with her caseload and also sought a transfer to a different position to escape the situation, but Hamilton refused those requests.

Regarding Hamilton unreasonably scrutinizing Elliott's work, the original complaint did not allege that the scrutiny was frequent or truly interfered with her ability to do her job.  By contrast, the amended complaint alleges that Elliott interacted with Hamilton "multiple times per day" in 2016 and "multiple times each week" in 2017 and 2018.  *Id.*, ¶ 39.  Elliott had to present her work product to Hamilton for his approval and signature.  The amended complaint further alleges that, compared to his review of other's work, Hamilton would delay in reviewing Elliott's work and would purposefully make unnecessary changes designed to frustrate, discourage and delay Elliott.

This only compounded the backlog of cases which Elliott had. According to the amended complaint,

> Hamilton's constant scrutiny and criticism of Ms. Elliott's work unreasonably interfered with her ability to perform her job because, among other things, it necessitated that she make non-substantive changes on previously completed assignments, which further increased her case backlog and prevented her from meeting deadlines that were fundamental to the performance of her job.

*Id..*, ¶ 48. Hamilton's conduct also allegedly had the following consequences on Elliott:

> Hamilton's criticism, which included suggestions that Ms. Elliott had not correctly performed her job or had missed deadlines, damaged her reputation among her peers and supervisors. As a result of Hamilton's criticism, Ms. Elliott was stigmatized, her peers stopped coming to her for advice and guidance, and her reputation was harmed. Ms. Elliott became isolated from her coworkers and felt constantly concerned that she would be terminated or forced to quit.

*Id..*, ¶ 40.

The Court likewise finds that the amended complaint cures the deficiencies of the original complaint regarding Hamilton's other types of behavior. *See, e.g., id.*, ¶¶ 75, 77 (alleging four dates on which Hamilton denied Elliott's requests for leave to care for her newborn and also alleging that Hamilton told Elliott that she would have to make up for any leave time which she took); *id*, ¶¶ 57–60 (alleging the factual circumstances regarding why the written reprimand which Hamilton caused to be issued against Elliott was unwarranted and retaliatory); *id.*, ¶¶ 66–67 (alleging the frequency and content of derogatory comments Hamilton made about Elliott's pregnancy and maternity, including that "no pregnant woman should need the amount of leave [Elliott] is seeking"). The amended complaint also contains allegations as to how it impacted Elliott's work performance. *See, e.g., id.*, ¶¶ 27, 67, 72, 81 (alleging that Howard's conduct, including his hostility regarding Elliott's pregnancy, maternity, and her leave requests caused her stress, turmoil and uncertainty which interfered with her work and manifested in physical conditions, including an ulcer); *id.*, ¶ 59–60 (alleging that the reprimand went into Elliott's personnel file).

In sum, considering the totality of the circumstances alleged in the amended complaint, the Court finds that Elliott has sufficiently alleged the existence of a workplace permeated by intimidation, ridicule, insult, or harassment so severe or pervasive as to alter the conditions of employment and create an abusive working environment. *See Ogbonna-McGruder*, 91 F.4th at 839.

Defendant argues that despite the additional factual allegations in the amended complaint, Elliott has failed to connect Hamilton's hostile conduct to retaliatory or sex-based animus. To state

a hostile work environment claim under Title VII, plaintiff must allege the existence of "a causal connection between the protected activity and the . . . harassment." *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000).

The Court finds that the amended complaint sufficiently alleges a causal connection to Elliott's complaint of sexual assault. Elliott alleges that she made her complaint in late February 2016, that Hamilton found out soon thereafter, and that the retaliation started within days or weeks in March and April 2016. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). *See also George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (temporal proximity can establish a *prima facie* case when the adverse employment action is taken "just days or weeks from when the employer learns of the employee's protected activity").

The Court also finds that the amended complaint sufficiently alleges a causal connection to her sex. In opposing Elliott's attempts to use leave during her pregnancy, Hamilton allegedly stated that "no pregnant woman" should need that amount of leave. The amended complaint further alleges that Hamilton allowed a male employee to use parental leave, but that Hamilton resisted and denied Elliott's attempts to use maternity leave.

Finally, defendant's motion to dismiss raises again the argument (first made in the motion to dismiss the original complaint) that plaintiff failed to exhaust her administrative remedies. No new issues or legal authorities are cited by defendant. The Court adheres to its earlier decision that Elliott exhausted the administrative grievance process. *See* Doc. 38, pp. 4–9.

**IV.    Conclusion**

Accordingly, defendant's motion to dismiss the amended complaint (Doc. 40) is DENIED.

*s/ James L. Graham*
JAMES L. GRAHAM
DATE: January 16, 2025                                    United States District Judge

5